IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BENJAMIN REICHERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:21-cv-153-ECM |
| ) | (WO) |
| LLOYD AUSTIN, SECRETARY, ) | |
| DEPARTMENT OF DEFENSE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER

Now pending before the Court is the Defendant Lloyd Austin's ("Austin") motion for summary judgment (doc. 40). Plaintiff Benjamin Reichert ("Reichert") has brought claims against Austin, in his capacity as the Secretary of the Department of Defense, for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 (the "Rehabilitation Act").[1] Austin has moved for summary judgment on all claims. Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the Defendant's motion for summary judgment is due to be GRANTED.

---

[1] Reichert's complaint also asserts claims under the ADAA. However, the parties address only Reichert's ADA and Rehabilitation Act claims. The Court construes Reichert's reference to the ADAA as a reference to the Americans with Disabilities Amendment Act ("ADAAA"). Those claims coincide with Reichert's ADA claims.

# I.  JURISDICTION

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

# II.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden

then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiff and draws all reasonable inferences in his favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party' and 'resolve all reasonable doubts about the facts in favor of the non-movant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

## III.  FACTS

This case derives from an incident that occurred between Reichert and his co-worker Lynn Myers ("Myers") on August 20, 2019 at Maxwell Air Force Base Elementary Middle School ("MEMS").  MEMS is operated by the Department of Defense Education Activity ("DoDEA").  Reichert was a full-time teacher at MEMS,[2] where he taught courses in Spanish and AVID[3] for the 2019–2020 school year.  Reichert also served an extra-duty position as the school's athletic director.  Athletic director responsibilities, which are to be completed outside of working duty hours, include maintaining the school's athletic equipment.  Myers, who remains a full-time teacher at MEMS, taught Physical Education ("P.E.") courses during the 2019–2020 school year.

---

[2] Officially, Reichert was taught .5 credits of AVID and .5 credits of Spanish.

[3] AVID is a course that provides support to students who struggle academically.

Toward the end of Reichert's planning period on the afternoon of August 20, 2019, Reichert went to the school's gymnasium ("gym") to set up and inspect the volleyball net. The gym was empty when Reichert first entered, and he began setting up the net. After a few minutes, the bell rang. Myers and students entered the gym shortly afterward for a P.E. class. The parties dispute the exact nature of the exchange that took place when Myers saw Reichert setting up the volleyball net. However, the parties agree that Myers told Reichert to leave because she needed to use the gym for class. Reichert perceived that Myers yelled at and berated him, and he was humiliated that this exchange took place in the presence of students. Reichert told Myers that he would report the incident to Principal Paul Hernandez ("Hernandez") and left the gym.

Reichert immediately reported the incident to Hernandez, who told Reichert that Myers was experiencing personal issues. Reichert felt that Hernandez dismissed this initial report. On August 23, 2019, Reichert emailed Hernandez to report what he perceived as further harassment from Myers. Because Reichert felt that Hernandez was not taking the incident seriously, he emailed Dr. Lisa Coleman ("Coleman"), the regional Community Superintendent for DoDEA, on August 26, 2019. Hernandez then scheduled a meeting with Reichert and Myers for the next day.

Reichert felt increasingly anxious due to the perceived harassment he had experienced at the hands of Myers. After school on August 26, 2019, he attempted to see a psychologist at the Veterans Affairs clinic ("VA") in Montgomery. Because the VA could not treat him that afternoon, Reichert returned the next day. Accordingly, Reichert did not attend the meeting with Hernandez and Myers. Also on August 27, 2019, Reichert

4

sent an email to Hernandez stepping down as athletic director.  Reichert indicated that he was stepping down to avoid Myers' work area.  On August 30, 2019, Reichert met with Hernandez and Coleman about the initial incident.  Myers did not attend this meeting.

Reichert next reached out to Christy Huddleston ("Huddleston"), the district superintendent for DoDEA, because he felt that he was not taken seriously at the August 30 meeting.  Coleman scheduled a meeting between herself, Reichert, Hernandez, and Myers for September 11.  In the interim, Reichert met with Dr. Caitlin Singletary ("Singletary"), a psychologist, on September 9, 2019.  Reichert requested that Singletary write a letter to MEMS about his mental condition.  Singletary composed a letter communicating that Reichert would like to formally request accommodations and "is seeking a formal meeting with leadership to create a detailed plan of action to reduce interactions with [Myers]." (Doc. 48-5 at 1).  Singletary expressed that "reduced interaction will improve [Reichert's] current level of distress."[4] (*Id.*).  Reichert emailed Singletary's letter to Hernandez that same day.

Although Reichert initially attended the September 11, 2019 meeting with Hernandez, Coleman, and Myers, he told the attendees that he did not wish to meet with Myers.  Myers then left the meeting, and Reichert met with Hernandez and Coleman.  Reichert expressed that he was requesting an accommodation.  Reichert also submitted a reasonable accommodation request form via email by the end of that day.  Reichert wrote

---

[4] Singletary explained in her deposition that she wrote this letter to facilitate a discussion between Reichert and his employer.  While Singletary did not believe that eliminating interactions with Myers was necessary, she did believe that reducing interactions would be a helpful accommodation for Reichert.

"[p]lease see letter from Dr. Singletary dated Sep 9, 2019" in the section inquiring what form of accommodation he was requesting. (Doc. 48-4 at 2).

On September 16, 2019 Coleman informed Reichert by email that she had completed an investigation of the August 20 incident. Coleman concluded that Reichert's allegations of harassment at the behest of Myers were unfounded. Coleman also concluded that Myers did not yell at Reichert but that the parties should refrain from communicating from a distance so as not to be perceived as yelling.

Until this point in the school year, Reichert's schedule required him to attend daily Professional Learning Committee ("PLC") meetings with Myers. PLCs are collaborations amongst co-teachers that involve activity planning and discussions about student performance and behavioral issues. On September 24, 2019, Reichert's attorney sent a letter to the school requesting that Reichert have no further contact with Myers. On September 26, 2019, Reichert met with Hernandez to discuss his request for accommodations. Hernandez informed Reichert that he was restructuring the PLC meeting format. As a result, Reichert would only attend one PLC meeting a week with Myers. Reichert would still need to attend a weekly faculty meeting with Myers. Although this scheduling change reduced his weekly interactions with Myers, Reichert informed Hernandez that this restructuring would not work for him.

To support his request for accommodations, Reichert submitted a Medical Inquiry Form, which was completed by a medical professional, on October 2, 2019. On October 15, 2019, Reichert met with Hernandez, Arlynda Almond ("Almond"), the Human Resources specialist in labor and employee relations for DoDEA, and Anna Revere

("Revere"), the disability program manager for the Americas region of DoDEA, to discuss his accommodations request.  In this meeting, Revere informed Reichert that DoDEA would be unable to eliminate all of Reichert's interactions with Myers.  Revere asked Reichert to return to his doctor to obtain a list of coping mechanisms that could be incorporated into a reasonable accommodation, which Reichert agreed to do.

On October 28, 2019, Hernandez asked Reichert by email whether he submitted the list of coping mechanisms to Revere.  Reichert replied that he would not be returning to his doctor or submitting any additional paperwork.  On November 5, 2019, Reichert first met with the EEOC to initiate filing a complaint for disability discrimination.[5] (Doc. 48-14 at 1).  Reichert's informal EEO complaint for disability discrimination was filed on November 6, 2019, and his formal complaint was filed on January 7, 2020.

In 2020, Hernandez learned that MEMS was losing one unit of full-time teaching credits for the 2020–2021 school year.  On April 28, 2020, Hernandez informed Reichert that Spanish was being outsourced for the following school year and that the AVID course was being eliminated, which would leave Reichert without a position.  When one of the school's English Language Arts ("ELA") teachers accepted a position teaching in Bahrain the following school year, Reichert requested to be reassigned to that position.  Initially, Hernandez told Reichert that reassignment was not possible because Reichert did not have the appropriate certification.  However, Reichert informed him of a DoDEA policy

---

[5] One document in the record provides November 15, 2019 as the day on which Reichert first met with the EEOC. (Doc. 40-20 at 1).  As Reichert's informal complaint was filed on November 6, 2019—nine days prior to that date—the Court construes the November 15, 2019 date as a typographical error.

allowing him to teach in that position for one year, contingent on his receiving future education credits.  Hernandez then agreed to reassign him.  Pursuant to the DoDEA policy, Reichert risked termination if he did not earn nine additional education credits within a year.

On or around June 30, 2020, Reichert interviewed for a teaching position at a school in Cuba.  Reichert felt that the interview went well, and he expected to hear back from the school the next week.  However, Reichert never heard back about the position.  Reichert believes that Hernandez, who was one of Reichert's references, provided a negative recommendation.  Hernandez, however, attests that he has always provided Reichert positive recommendations.

In December 2020, Reichert requested a transfer to a new school within DoDEA. However, Reichert was not aware of any open positions within DoDEA for which he was qualified.  On or around June 24, 2021, Reichert interviewed for a position with a school in Fort Knox, Kentucky.  Hernandez, who stepped down as principal of MEMS in April of 2021, was no longer one of Reichert's references.  Reichert received an offer from the Fort Knox school and is currently employed there today.

Throughout his time at MEMS, Reichert received positive performance evaluations. Professional collaboration is one aspect of teacher performance that these evaluations assess.  Hernandez considers collaboration with colleagues an essential function for all teachers at MEMS, and Reichert admits that collaboration is a required part of his job.

## IV.  DISCUSSION

Austin has moved for summary judgment on all of Reichert's claims, which Reichert opposes.  The Rehabilitation Act forbids federal agencies from discriminating in the employment of an otherwise qualified individual with a disability.[6] *See* 29 U.S.C. § 791; *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).  It also prohibits employers from retaliating against an individual who participates in an activity otherwise protected by the statute. 29 U.S.C. § 791(f) (incorporating the ADA's anti-retaliation provisions).  "The standard for determining liability under the Rehabilitation Act is the same as that under the ADA." *Sutton v. Lader*, 185 F.3d 1203, 1207 n.5 (11th Cir. 1999). The Court will first address Reichert's disability discrimination claim, followed by his retaliation claim.

### A.  Disability Discrimination

Reichert claims that he was subject to disability discrimination because DoDEA denied his requests for an accommodation in the form of 1) reducing or eliminating his interactions with Myers and 2) failing to assist him in transferring schools.  "To establish a *prima facie* case of discrimination under the [Rehabilitation] Act, an individual must

---

[6] Reichert also brought claims against Austin under the ADA.  However, the United States is not an "employer" as defined by the ADA. 42 U.S.C. § 12111(5)(B) (excluding "the United States" from the ADA's definition of an employer).  Accordingly, Reichert cannot bring an ADA claim against Austin. *See Paschal v. McHugh*, 2015 WL 3836965, at *20 (N.D. Ala. June 22, 2015) ("The Rehabilitation Act provides the exclusive remedy for a federal employee asserting a disability discrimination claim.").  Austin's motion for summary judgment is due to be granted as to Reichert's ADA claims.

show that (1) he has a disability;[7] (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (quotation and citation omitted). "[T]o trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022). An accommodation is reasonable "only if it enables the employee to perform the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

### 1. Eliminating Contact with Myers

Austin argues that Reichert's requested accommodation was not reasonable because eliminating contact with Myers would have prevented Reichert from performing an essential function of his job—collaborating with co-workers. The Court agrees. In *Solloway v. Clayton*, plaintiff employee suffered from post-traumatic stress disorder ("PTSD") related to a prior sexual assault. 738 F. App'x 985, 986 (11th Cir. 2018). Plaintiff employee learned that her immediate supervisor was disciplined for watching pornography at the workplace, which triggered her PTSD. *Id.* To avoid interacting with her supervisor, plaintiff employee requested an accommodation allowing her to telework full-time. *Id.* The plaintiff's employer denied this request; however, it allowed her to

---

[7] Reichert asserts that he suffers from bipolar disorder and an adjustment disorder but does not clearly identify which of these disorders is the basis of his claims. Nevertheless, Austin does not dispute that Reichert suffers from a disability, and the Court finds that this element of Reichert's claim is satisfied.

telework on alternating days with her supervisor. *Id.* at 986–87.  The Eleventh Circuit held that the plaintiff's employer did not violate the Rehabilitation Act by denying the plaintiff's request to telework full-time. *Id.* at 988.  It reasoned that the employer reasonably accommodated the plaintiff by modifying her schedule because she successfully performed her job for two years with the modification. *Id.*  The Circuit noted that "a guarantee that [the plaintiff] would never encounter [her supervisor]" was not reasonable. *Id.*

The case at hand resembles *Solloway* because Reichert, like the *Solloway* plaintiff, requested an accommodation that would eliminate his interactions with a co-worker.  Here, like the employer in *Solloway*, DoDEA adjusted Reichert's schedule—by reorganizing the PLC structure—in a way that reduced Reichert's interactions with that co-worker. Although this modified schedule was not Reichert's desired accommodation, "an employer is not required to accommodate an employee in *any* manner that the employee desires—or even provide that employee's preferred accommodation." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020).  Here, like the plaintiff in *Solloway*, Reichert successfully performed his job under this modified schedule.  Until his transfer to Fort Knox in 2021, Reichert maintained positive performance evaluations throughout the 2019–2020 and 2020–2021 school years.  Thus, the Court finds that Reichert was offered a reasonable accommodation.[8]

---

[8] Reichert argues that the restructured PLCs were not an accommodation because Reichert was never told that the meetings were restructured for the purpose of accommodating him.  Reichert points to no authority for the proposition that the individual must be explicitly told that a change in the workplace was made as an accommodation.

Further, the Court finds that eliminating all contact with Myers would not have been reasonable because accommodating Reichert in such a manner would have prevented him from performing an essential function of his job. Reichert's responsibilities at MEMS included attending PLC meetings to co-plan, review student performance, and discuss behavioral issues with colleagues. In fact, the MEMS teacher evaluation rubric assessed teachers' collaboration with colleagues as part of their job performance. Removing Reichert from all PLC and faculty meetings with Myers—as he requested—would have prevented him from fully collaborating with his co-workers, an essential function of his job. The Court finds *Solloway*'s reasoning persuasive and agrees that Reichert's requested accommodation was unreasonable.[9] Austin's motion for summary judgment is due to be granted as to this claim.

### 2. Failure to Assist in Reichert's Transfer

Reichert also asserts in his complaint that DoDEA engaged in disability discrimination when it denied his request for an accommodation in the form of a transfer to a new school.[10] However, Reichert has not addressed this claim—in the context of disability discrimination—in his opposition to summary judgment. Therefore, Reichert has abandoned this claim. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.

---

[9] Additionally, the Court finds that Reichert caused a breakdown in the interactive process by retracting his agreement to provide further medical documentation. Austin cannot be held liable for denying an accommodation when Reichert was responsible for the deterioration in the interactive process designed to implement an accommodation. *See D'Onofrio*, 964 F.3d at 1022 ("[A]n employer will not be liable for failure to accommodate if the employee is responsible for the breakdown of the interactive process.").

[10] Reichert appears to base this claim on DoDEA's alleged failure to affirmatively facilitate his transfer to a new facility. This claim is distinct from Reichert's claim that Hernandez provided negative recommendations on Reichert's behalf.

1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Notwithstanding, Reichert has not provided evidence of an open position for which he was qualified to be transferred. Thus, Reichert has not established that his transfer was feasible. Accordingly, Austin's motion for summary judgment is due to be granted as to this claim.

### B. Retaliation

Reichert alleges that he suffered retaliation because 1) he was reassigned to the ELA teaching position, 2) DoDEA failed to assist his transfer to another school, 3) Hernandez provided negative references about Reichert to other schools, 4) Hernandez did not consider promoting Reichert to a literacy leader position, 5) Hernandez withheld information from Reichert about his ability to teach ELA, and 6) DoDEA requested additional paperwork from Reichert regarding an accommodation.

To establish a *prima facie* case of retaliation under the Rehabilitation act, Reichert must "show that [he] engaged in a protected activity, that [he] suffered an adverse employment action, and that the protected activity was causally connected to the adverse employment action." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1316 (11th Cir. 2007). "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). "If the employer proffers even one such reason, the burden then shifts back to the plaintiff, who must show that the reason given by the employer was a mere pretext for discrimination." *Owens*, 52 F.4th at 1338. For "temporal proximity alone . . . to establish

an inference of retaliation . . . , the temporal relationship between the protected activity and the adverse employment action must be 'very close.'" *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010).  "Even a three-month interval between the protected expression and the employment action . . . is too long." *Id.*

Austin first argues that Reichert failed to administratively exhaust his retaliation claims.  Reichert responds that he was not required to exhaust these claims because they grew out of an earlier charge.  In *Gupta v. East Texas State University*, the Fifth Circuit held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge," 654 F.2d 411, 414 (5th Cir. 1981),[11] a principle the Eleventh Circuit reiterated in *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) ("It has long been established in this circuit that the scope of a judicial complaint is defined by the scope of the EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'").  However, the Supreme Court later established in *National Railroad Passenger Corp. v. Morgan* that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002).  Subsequently, Eleventh Circuit opinions question *Gupta* and *Baker*'s applicability when post-charge retaliation occurs before a lawsuit is filed. *See Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 893 (11th Cir. 2014) (holding plaintiff failed to exhaust post-charge retaliation claims that occurred prior to lawsuit).  Under the reasoning applied in *Duble*, Reichert has not

---

[11] This case is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

exhausted his retaliation claims because the relevant conduct occurred before Reichert filed this lawsuit.  Nonetheless, each of Reichert's retaliation claims also fail on their merits.

Reichert claims that he engaged in protected activity when he 1) requested accommodations from DoDEA in September 2019, 2) filed his informal EEO complaint in November 2019, 3) filed his formal EEO complaint on January 7, 2020, 4) requested a hearing with the EEOC on June 11, 2020, 5) sent correspondence to DoDEA on September 24, 2019, and 6) sent correspondence to DoDEA on December 4, 2020.[12]  The Court will address each of Reichert's claims for retaliation individually.

### 1. Reassignment to the ELA position

Reichert argues that Hernandez retaliated against him by eliminating Reichert's position and reassigning him to teach ELA.  However, Reichert has not submitted evidence—or argued in opposing summary judgment—that his reassignment was causally connected to any protected activity in which he engaged.  Time alone cannot support an inference of retaliation in this case.  Reichert learned that his 2019–2020 teaching position was being eliminated for the following school year on April 28, 2020.  Reichert's most recent protected conduct took place on January 7, 2020, when he filed his formal EEO complaint.  The gap between that protected activity and the alleged adverse conduct is almost four months, too long to support a finding of causation based on temporal proximity.

---

[12] Austin does not appear to contest that each of these actions constitute protected activities and, construing the facts in the light most favorable to Reichert, the Court will assume that each of these actions constitute protected activities.

*Brown*, 597 F.3d at 1182.  Because Reichert has not submitted sufficient evidence of causation on this claim, Austin's motion for summary judgment is due to be granted.

Even if Reichert had established causation, Hernandez offered legitimate, non-retaliatory reasons for reassigning Reichert.  Hernandez explained that MEMS lost a full-time teaching credit for the 2020–2021 school year.  When the school loses a teaching credit, elective courses must be eliminated from the schedule before required courses.  Hernandez explained that because Reichert taught an elective course, Reichert's position had to be eliminated before required courses, such as math or physical education.  Hernandez further explained that another teacher was assigned to teach AVID because she was the only teacher whose schedule would allow her to do so.  Reichert, Hernandez explained, had too many ELA courses to allow him to also teach AVID.  Reichert has not submitted evidence that this rationale for his reassignment is pretextual.  Accordingly, Reichert has not met his burden on this retaliation claim, and Austin's motion for summary judgment is due to be granted.

## 2. DoDEA failed to assist Reichert's transfer

Reichert asserts in his complaint that DoDEA retaliated against him by failing to transfer him to a new position after his request in December 2020.  However, Reichert has not provided evidence of an open position for which he was qualified to be transferred at that time.  Thus, Reichert has not established that a transfer was feasible.  Accordingly, Reichert has not established a *prima facie* case on this claim, and Austin's motion for summary judgment is due to be granted.

### 3. Hernandez provided negative references to other schools

Reichert claims that Hernandez retaliated against him when Hernandez "blackballed" Reichert by providing negative references to other schools. However, Reichert submits no evidence that Hernandez ever provided a negative recommendation. In fact, Hernandez attests that he has always provided positive recommendations for Reichert. Reichert subjectively believed that he performed well in his interviews—thus, he reasons, Hernandez must have provided a negative reference. However, this subjective belief is legally insufficient to defeat Hernandez's testimony to the contrary. *DeLee v. City of Lanett*, 2023 WL 27871, at *7 (M.D. Ala. Jan. 3, 2023) (finding speculation insufficient to defeat sworn testimony at summary judgment). Austin's motion for summary judgment on this claim is due to be granted.

### 4. Hernandez did not consider promoting Reichert to literacy leader

Reichert also claims that he was retaliated against because he was not considered for a promotion to the literacy leader position at MEMS. However, Hernandez attests that he did consider Reichert for the literacy leader position, and Reichert does not submit evidence to the contrary. Hernandez explained that he did not promote Reichert because Reichert was new to the ELA position and had not yet received his certification. Instead, Hernandez promoted a certified teacher with more experience. Additionally, promoting Reichert to the position would have increased Reichert's interactions with Myers because one of the literacy leader's responsibilities was to provide staff-wide training. Reichert has not shown that these explanations are pretextual. Because Reichert fails to rebut

17

Hernandez's rationale for promoting a different teacher, Reichert's retaliation claim fails. Austin's motion for summary judgment on this claim is due to be granted.

        5.  <u>Hernandez withheld information from Reichert about his ability to teach ELA</u>

Reichert also alleges that Hernandez retaliated against him by intentionally withholding details about Reichert's ability to teach ELA for the 2020–2021 school year. However, Reichert does not submit evidence to support this theory. Once again, Hernandez attests that he was unaware of the DoDEA policy allowing Reichert to teach ELA until Reichert informed him of the policy. Beyond Reichert's subjective belief, he has not submitted evidence that Hernandez intentionally withheld this information from him. Austin's motion for summary judgment as to this claim is due to be granted. *Id.* (finding speculation insufficient to defeat sworn testimony at summary judgment).

        6.  <u>Request for additional paperwork</u>

Reichert also argues that DoDEA retaliated against him by requesting unnecessary medical documentation from him. Reichert's argument that this additional paperwork was unnecessary is supported only by his own subjective belief that he submitted sufficient documentation. Nevertheless, the Court finds that requesting additional medical documentation is not an adverse action that would support a retaliation claim. *See Tayag v. Lahey Clinic Hosp., Inc.*, 677 F. Supp. 2d 446, 453 (D. Mass. 2010) ("Being asked to produce additional paperwork, even if the request was unreasonable, does not constitute

'adverse employment action' under the ADA.").[13]  Additionally, Reichert has not shown that DoDEA's rationale for requesting further medical documentation is pretextual. Accordingly, Austin's motion for summary judgment on this claim is due to be granted. Because Reichert has not met his burden on any of his retaliation claims, Austin's motion for summary judgment is due to be granted in all parts.

## V.  CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that the Defendant's motion for summary judgment (doc. 40) is GRANTED.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 8th day of September, 2023.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] The Court recognizes that this case is non-binding authority and addresses disability discrimination rather than retaliation.  Nevertheless, the Court finds this case persuasive.